# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THE ROASTING PLANT OF
MICHIGAN JV, LLC, a Michigan limited
liability company; ROASTING PLANT
OF DEARBORN HEIGHTS, LLC, a
Michigan limited liability company;
ROASTING PLANT OF ANN ARBOR,
LLC, a Michigan limited liability
company; ROASTING PLANT OF
DEARBORN, LLC, a Michigan limited
liability company; and ROASTING
PLANT OF SOUTHFIELD, LLC, a
Michigan limited liability company,

Case No. 2:18-cv-10295

       Plaintiffs,

vs.

ROASTING PLANT, INC., a Delaware
corporation; MIKE CASWELL, an
individual; and THOMAS
HARTOCOLLIS, an individual,

       Defendants.

_____

**There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this Court, nor has any such action been previously filed and dismissed after being assigned to a judge.**

## <u>VERIFIED COMPLAINT</u>

Plaintiffs, The Roasting Plant of Michigan JV, LLC ("RP Michigan"),

Roasting Plant of Dearborn Heights, LLC ("RP DH"), Roasting Plant of Ann

Arbor, LLC ("RP AA"), Roasting Plant of Dearborn, LLC ("RP Dearborn"), and Roasting Plant of Southfield, LLC ("RP Southfield") (collectively "Plaintiffs"), by and through their undersigned counsel, complains of Roasting Plant, Inc. ("RP"), Mike Caswell ("Caswell"), and Thomas Hartocollis ("Hartocollis") (collectively "Defendants") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff RP Michigan is a Michigan limited liability company with its registered office located at 21355 Hickorywood Court, Dearborn Heights, MI 48127, which is in this judicial district.

2.     Plaintiff RP DH is a Michigan limited liability company with its registered office located at 21355 Hickorywood Court, Dearborn Heights, MI 48127, which is in this judicial district.

3.     Plaintiff RP AA is a Michigan limited liability company with its principle place of business at 312 S State St., Ann Arbor, MI 48104, which is in this judicial district.

4.     Plaintiff RP Dearborn is a Michigan limited liability company with its registered office located at 37484 Interchange Dr., Farmington Hills, MI 48335, which is in this judicial district.

5.      Plaintiff RP Southfield is a Michigan limited liability company with its registered office located at 37484 Interchange Dr., Farmington Hills, MI 48335, which is in this judicial district.

6.      Upon information and belief, Defendant RP is a Delaware corporation with its principle place of business located at 81 Orchard Street, New York, NY 10002.

7.      Upon information and belief, Defendant Caswell was the Founder, Chairman of the Board of Directors, and Chief Executive Officer of Defendant RP at all relevant times and is a citizen of the State of New York.

8.      Upon information and belief, Defendant Caswell conducts business and causes Defendant RP to conduct business in the State of Michigan in connection with the acts and omissions alleged herein, including but not limited to entering into contracts with Michigan business entities, collaborating with Michigan business entities to further Defendant RP's sales and marketing efforts, offering and/or selling Defendant RP's products and services in Michigan, sending Defendant RP's employees and/or agents to Michigan in furtherance of RP's business, and disseminating Defendant RP's advertisements and marketing materials to business entities located and/or doing business in Michigan.

216811163.1 59881/324418

9.      Upon information and belief, Defendant Hartocollis was the Chief Sales and Marketing Officer at RP at all relevant times, and is a resident of the State of New York.

10.     Upon information and belief, Defendant Hartocollis conducts business and causes Defendant RP to conduct business in the State of Michigan in connection with the acts and omissions alleged herein, including but not limited to entering into contracts with Michigan business entities, collaborating with Michigan business entities to further Defendant RP's sales and marketing efforts, offering and/or selling RP's products and services in Michigan, sending Defendant RP's employees and/or agents to Michigan in furtherance of RP's business, and disseminating Defendant RP's advertisements and marketing materials to business entities located and/or doing business in Michigan.

11.     Defendants RP, Caswell, and Hartocollis have directly done and/or caused acts to be done, and/or caused consequences to occur in the State of Michigan, resulting in injuries to the Plaintiffs.

12.     This Court has personal jurisdiction over Defendants, because, *inter alia*, they have had continuous, systematic, and substantial contacts within the State of Michigan, including doing business in Michigan, traveling to Michigan in furtherance of Defendant RP's business efforts, directing sales and advertising

4

efforts through the Internet and otherwise into the State of Michigan, and entering into contracts with residents of the State of Michigan.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a), because this action is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. Additionally, this Court has subject matter jurisdiction under Section 901(a) of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. Section 1964(c). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the Michigan claims asserted herein that form part of the same case and controversy as those claims that are subject to the Court's jurisdiction.

14. This Court has general *in personam* jurisdiction over Defendants in this cause.

15. This Court has limited or specific *in personam* jurisdiction over Defendants pursuant to Mich. Comp. Laws § 600.705 and Mich. Comp. Laws § 600.715.

16. Venue is properly laid in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2).

216811163.1 59881/324418

## GENERAL ALLEGATIONS

17.     Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

18.      Defendant RP holds itself out as having developed and owning a unique and distinctive system for the development, establishment, and operation of flagship retail cafés, retail cafés, retail kiosks, and other coffee retail concepts, operating under its protected Marks, specializing in the preparation and sale of specialty coffee beverages, proprietary coffee products, and other menu items developed and owned by Defendant RP.

19.     Defendant RP holds itself out as having the ability to "license" stores so long as those stores operate utilizing RP's distinguishing characteristics, which include without limitation, the name "ROASTING PLANT," distinctive interior and exterior design and layouts, decor, color schemes, and furnishings, confidential food formulae and recipes used in the preparation of food products, formulas and specifications for preparing specialty coffee drinks and other coffee and non-coffee-based products, specialized menus, standards and specifications for equipment, including patented in-store coffee storage, roasting, transporting, ordering and fulfilling technology hardware and software called the Roasting Plant Javabot™, customized Point of Service software, and back office management and

216811163.1 59881/324418

reporting and control system equipment layouts, products, operating procedures, and management programs.

20.    Mike Shehadi ("Shehadi") owns and controls Plaintiffs.

21.    In or about November of 2015, Shehadi and Defendants entered into discussions regarding a Roasting Plant franchise or joint venture opportunity.

22.    During the course of those discussions, Defendants made multiple representations of material fact (collectively, the "Pre-LOI Representations").  For example and not by way of limitation, on or about March 1, 2016, Defendant Caswell sent Mr. Shehadi an email entitled "Store-Level Economics."  An excel spreadsheet entitled "US Store PL Simulation" was attached to the email and was purported by Defendants to show how the stores across North America performed. The US Store PL Simulation showed stores as having *inter alia*:

      a.    $1,100,000 in revenue per year;

      b.    a 25.4% EBITDA;

      c.    $513,182 in total operating expenses; and

      d.    $699,406 in build-out costs.

23.    The Pre-LOI Representations were materially false

24.    By the end of March, relying on the veracity of the Pre-LOI Representations, Mr. Shehadi executed a Letter of Intent for Plaintiff RP Michigan to purchase the RP Detroit store and the right to "license" six other stores, four of

which came into existence under the names Roasting Plant of Dearborn Heights, LLC, Roasting Plant of Ann Arbor, LLC, Roasting Plant of Dearborn, LLC, and Roasting Plant of Southfield, LLC (the "LOI").

25.    After execution of the LOI, Defendants made multiple representations of material fact (collectively, the "Pre-Agreement Representations").  For example and not by way of limitation, on or about June 9, 2016, Defendant Caswell sent Mr. Shehadi an email entitled "Ann Arbor Proforma."   An excel spreadsheet entitled "Ann Arbor Proforma" was attached to the email and was purported by Defendants to be financial projections for the Ann Arbor store.  In the email and on the accompanying  Ann Arbor Proforma, Defendants projected:

      a.   $1,400,000 per year in revenue;

      b.   a 28.1% EBITDA;

      c.   $602,272 in operating expenses; and

      d.   $849,419 in build-out costs.

26.    The Pre-Agreement Representations were materially false.

27.    Effective on August 1, 2016, relying on the veracity of the Pre-LOI Representations and the Pre-Agreement Representations, Plaintiff RP Michigan entered into the Roasting Plant Coffee Development Agreement with Defendant RP (the "Agreement"). **Exhibit A**. The Agreement inured to the benefit of Plaintiffs.  A copy of the fully executed Agreement is in Defendants' possession.

8

28.     The Agreement was drafted by Defendant RP.

29.     On August 29, 2016, on behalf of Defendant RP, Defendant Caswell executed a "RP Retail Unit License Agreement Addendum to Development Agreement" approving the RP DH location.

30.     Under the Agreement, Defendant RP granted Plaintiffs the right to engage in the business of offering, selling, or distributing goods or services under Defendant RP's marketing plan or system prescribed in substantial part by Defendant RP, and to engage in the business of offering, selling, and/or distributing goods or services substantially associated with RP's trademark, service mark, trade name, logotype, advertising, an/or other commercial symbols designating RP.

31.     More specifically, under paragraph 2(a) of the Agreement, Defendant RP granted all Plaintiffs the exclusive right and license to develop seven (7) RP Retail Units at Venues within a specified Territory; and a license to use the RP System and trademarks exclusively in connection with the development, construction and operation of RP Retail Units at the locations approved by RP. *Id*.

32.     The Agreement also provided Defendant RP with the right to control numerous practices and operations of Plaintiffs including, *inter alia*, qualifications and training requirements for employees, and the right to require Plaintiffs to remodel, renovate and modernize the RP stores. *Id*. at ¶(3)(C)(6),(8).

216811163.1 59881/324418

33.     Under paragraph 5(B) of the Agreement, Defendant RP required that stores be operated in "strict accordance" with the operational manual created and supplied by Defendant RP. *Id*.

34.     Under paragraph 5(C) of the Agreement, Defendant RP required marketing and promotion efforts in strict compliance with Defendant RP's policies and provisions, including without limitation the submission of all marketing materials to Defendant RP for approval. *Id*.

35.     Under paragraph 5(D) of the Agreement, Defendant RP required its approval for any site locations for stores. *Id*.

36.     Under paragraph 7 of the Agreement, Defendant RP retained the right to control and oversee all the methods and operations of the stores, including but not limited to supplies, products, menu items, product sources, hours of operation, advertising efforts and content, computer systems and software, and management system. *Id*.

37.     Defendant RP also required maintenance of "uniform standards of operation for all RP Retail Units," established by Defendant RP, in order to "protect the goodwill" of Defendant RP, "the RP System" and its trademarks. *Id*.

38.     All menu items were required to be made in "strict compliance with [RP's] written standard specifications, recipes and requirements" as provided in

Defendant RP's manuals or in other writings provided by Defendant RP. *Id*. at 7(B)(4).

39.     Under paragraph 8 of the Agreement, all supplies, equipment, furnishings and fixtures were required to conform to specifications dictated by Defendant RP, all of which was required to be purchased from suppliers approved or designated by Defendant RP. *Id*.

40.     Under paragraph 8(B), Defendant RP retained the right to enter and inspect any store locations to ensure each "Unit is being operated in accordance with the terms of this Agreement, the manuals, and other applicable rules of [Defendant RP]."

41.     Under paragraph 11, Defendant RP required the use of the words "Roasting Plant," Roasting Plant Coffee," or "Roasting Plant New York" as the trade name at all retail units and restricted the use of any other words without Defendant RP's consent.

42.     Under paragraph 4 of the Agreement, in consideration of the rights and license granted, Defendant RP required a non-refundable "initial development fee" to Defendant RP in the amount of $90,000 U.S. dollars.  *Id*. at ¶(4)(a).

43.     Under paragraph 2(E) of the Agreement, Defendant RP stated that "Prior to the execution of a License Agreement for each RP Retail Unit, [Defendant RP] shall determine whether any franchise disclosure or registration

11

compliance are required.  If such requirements exists, [Defendant RP] and [RP Michigan] will comply with such requirements prior to entering into a License Agreement for any RP Retail Unit."

44.    Upon execution of the Agreement, the $90,000 fee was paid to Defendant RP by wire transfer.

45.    Following execution of the Agreement, Defendant RP was further paid $150,000.00 by wire transfer as a down payment on three JavaBots ($50,000.00 per machine), as was required under the Agreement.

46.    In or about September of 2016, under the guidance and at the direction Defendants, two lease agreements were executed for additional stores.

47.    In or about October 2016, construction began on the two new locations.

48.    Following execution of the leases for the two new locations, pursuant to the Agreement, Defendant RP was paid two license fees ($20,000.00 each) by wire transfer for the two new locations.

49.    Over the course of 2016, Defendant RP was further paid $450,000.00 by wire transfer to cover the remainder of the costs for the JavaBots that Defendant RP required to be used at all locations.

50.    Defendants Caswell, Hartocollis, directly and indirectly, caused and/or induced the previously described wire transfers to occur. Defendant RP,

12

through its agents and employees, caused or induced the previously described wire transfers to occur.

51.     To date, under the Agreement, Plaintiffs have been forced to expend at least $3,172,311.55, including but not limited to the costs detailed above, as well as for required build out and construction costs.

52.     Defendants have consistently exerted a high degree of control over the operations and business model, and even installed a security system (for which Defendant RP required the stores to pay) so Defendants could monitor store operations from their personal devices.

53.     At the time that Mr. Shehadi issued the LOI for the benefit of Plaintiffs, he believed that each of the Pre-LOI Representations were true.

54.     At the time that Mr. Shehadi entered into the Agreement for the benefit of Plaintiffs, he believed that each of the Pre-LOI Representations and each of the Pre-Agreement Representations were true.

55.     At the time that Mr. Shehadi authorized the sums detailed above to be paid to Defendant RP, he believed that each of the Pre-LOI Representations and each of the Pre-Agreement Representations were true.

56.     But for the Pre-LOI Representations and the Pre-Agreement Representations, Mr. Shehadi would not have (for the benefit of Plaintiffs) (i)

issued the LOI, (ii) entered into the Agreement, or (ii) authorized transmission of the funds identified above to Defendant RP.

57.     Plaintiffs have since learned that many, if not all, of the Pre-LOI Representations and Pre-Agreement Representations are false.

## FRAUDULENT CONDUCT BY DEFENDANTS IN VIOLATION OF THE FEDERAL TRADE COMMISSION ACT

58.     Under The FTC Franchise Rule, 16 C.F.R. § *et seq.*, franchisors are required to provide prospective franchisees with a complete and accurate basic disclosure document containing specific types of information in a form prescribed by regulation. The FTC Franchise Rule further provides that the failure to provide a franchisee with the necessary disclosures "***is an unfair or deceptive act or practice*** in violation of § 5 of the Federal Trade Commission Act [15 U.S.C.A. § 45]." (emphasis added).

59.     Pursuant to the Agreement, Plaintiffs were to operate their stores while utilizing and associating themselves with Defendant RP's trade name, trademark, service mark, and other commercial symbols.

60.     The Agreement granted Defendant RP with authority and control over the manner in which Plaintiffs operated their franchises.

61.     Plaintiffs were required to make payments to Defendant RP in excess of $500 pursuant to the Agreement. These payments included a mandatory initial

development fee, purchase of specified products and equipment, royalty fees, and other fees as a condition to commencing operation of the franchises.

62.    The FTC has issued an advisory opinion noting that "[w]hether a business relationship constitutes a 'franchise,' is not dependent upon what the parties call the relationship ... [r]ather, a relationship is covered by the Franchise Rule if it satisfies the definitional elements of a 'franchise' set forth in the Franchise Rule." Intent is not relevant under the FTC Rule; if the defining elements are present the relationship is a franchise. FTC Informal Staff Advisory Op. 98-4 (1998).

63.    Plaintiffs are "franchisee[s]" within the meaning of the FTC Franchise Rule, 16 C.F.R. § 436.1(i), and fall within the class of persons that the FTC Franchise Rule, which implements the Federal Trade Commission Act ("FTC Act"), was intended to protect.

64.    Defendants are "franchisors" within the meaning of the FTC Franchise Rule 16 C.F.R. § 436.1(k).

65.    The FTC Franchise Rule required Defendants, as franchisors, to provide all Plaintiff franchisees with disclosure documents required by 16 C.F.R. § 436.2-6, including, *inter alia*, the franchisor's financial information, patents, trademarks, and territories. *See* 16 C.F.R. §§ 426.2(a), 436.4, 426.6(a).

66.     Defendants never provided Plaintiffs with the necessary disclosures either at the outset of their franchise relationships, upon material changes to the parties' relationship, or in connection with the offer of the Agreement. This failure is "an unfair or deceptive act or practice" under the FTC Franchise Rule.

## COUNT I – AGAINST ALL DEFENDANTS
## VIOLATIONS OF MICHIGAN'S FRANCHISE INVESTMENT LAW – MICH. COMP. LAWS § 445.1501, *ET SEQ.* ("MFIL")

67.     Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

68.     The Agreement between the parties constitutes a franchise agreement under Mich. Comp. Laws § 445.1502(3)(a) through (c). Accordingly, Defendant RP was obligated to comply with the requirements of the Franchise Investment Law statute, Mich. Comp. Laws § 445.1501, *etc*.

69.     At no time have Defendants ever provide to Plaintiffs a disclosure statement as defined in and required by Mich. Comp. Laws § 445.1508.

70.     At no time before execution of the Agreement did Defendant RP ever file with the State of Michigan a notice to offer and sell franchise in accordance with Mich. Comp. Laws § 445.1507a.

71.     Defendants' conduct constitutes a violation of Mich. Comp. Laws § 445.1505.

72.     Pursuant to MCL 445.1531(1), Defendants' violations of Mich. Comp. Laws § 445.1505 and/or Mich. Comp. Laws § 445.1508 render Defendants liable to Plaintiffs for damages and/or rescission, with interest from the date of purchase at 12% per year and reasonable attorneys' fees and court costs.

73.     Pursuant to Mich. Comp. Laws § 445.1531(3), Defendants' violation of Mich. Comp. Laws § 445.1507a renders them liable for the damages caused by the noncompliance and Plaintiffs are entitled to damages and/or rescission and restitution under Mich. Comp. Laws Ann. § 445.1531(1).

74.     Pursuant to Mich. Comp. Laws § 445.1520, Defendants Caswell and Hartocollis are jointly and severally liable with and to the same extent as Defendant RP.

## COUNT II – AGAINST DEFENDANT RP
## FRAUD FOR VIOLATIONS OF THE FEDERAL TRADE COMMISSION ACT, 16 C.F.R. § 436.5 *ETC.*; 15 U.S.C. § 45, AND VIOLATIONS OF FMIL

75.     Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

76.     The FTCA regulations contained in 16 C.F.R. § 436.5 created a duty on the part of Defendant RP to make required disclosures to Plaintiffs.

77.     The FMIL created a duty on the part of Defendant RP to make required disclosures to Plaintiffs.

17

78.     Defendant RP failed to make any of the disclosures required under the FTCA regulations or the MFIL.

79.     Defendant RP's failure to make the required disclosures constitutes a knowing and intentional failure to disclose material information and, therefore, was fraudulent.

80.     As a result of Defendant RP's failure to make the required disclosures, Plaintiffs have suffered substantial economic losses.

## COUNT III – AGAINST ALL DEFENDANTS
## FRAUD DUE TO PRE-LOI REPRESENTATIONS AND PRE-AGREEMENT REPRESENTATIONS

81.     Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

82.     Defendants intentionally made false representations of material facts to Plaintiffs, including but not limited to the Pre-LOI Representations, the Pre-Agreement representations, and the representation that Defendant RP would make all required disclosures "prior to entering into a License Agreement for any RP Retail Unit," as alleged in paragraph 43, supra.

83.     The representations of Defendants were false when they were made.

84.     Defendants knew that their representations were false when they were made, or they made them recklessly, without knowing whether they were true.

85.     Defendants intended that Plaintiffs rely on the representations.

86.     Plaintiffs reasonably and/or justifiably relied on the representations of Defendants in entering into the Agreement, continuing to conduct business with the Defendants, continuing to expend funds in furtherance of the Agreement, and paying Defendant RP, *inter alia* the $90,000.00 "initial development fee," the two $20,000.00 "licensing fees," and $600,000.00 for the purchase of the three JavaBots.

87.     As a result of the fraudulent misrepresentations of Defendants, Plaintiffs have suffered substantial economic losses.

## COUNT IV – AGAINST ALL DEFENDANTS
## VIOLATIONS OF THE RICO ACT, 18 U.S.C. § 1962 (A), (B), (C), AND (D) ("RICO")

88.     Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

89.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding a legal or beneficial interest in property.

90.     Defendants constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

91.     Defendants have associated together for the common purpose of defrauding Plaintiffs by presenting a fraudulent scheme to obtain and retain funds from Plaintiffs.

92.   The fraudulent scheme perpetrated by Defendants includes but is not limited to, providing Plaintiffs with materially false financial forecasts, misrepresenting the legality of the Agreement, misrepresenting the legal form of the franchises, and attempting to avoid compliance with the MFIL and the Federal Trade Commission Act.

93.   Defendants have conducted the affairs of the enterprise through a pattern of racketeering activity by utilizing the enterprise as a means to commit fraud in connection with obtaining and retaining funds from Plaintiffs, in violation of 18 U.S.C. § 1962.

94.   The Individual Defendants operated Defendant RP as an ongoing organization and as continuing unit, as Defendant RP was comprised of the same core personnel, including at least the individual Defendants, who continued the scheme over time through Defendant RP.

95.   The Individual Defendants not only participated in the fraudulent scheme, but also participated in the operation or management of the enterprise itself, as indicated by their continuation with the scheme over time.

96.   Defendants have a financial interest in the success of the enterprise and share in the profits.

97.   Defendants exerted control and made decisions on behalf of the enterprise or knowingly carried them out.

## DEFENDANTS' RACKETEERING ACTIVITIES

98.     Defendants, in making their Pre-LOI Representations and Pre-Agreement Representations, in issuing the LOI, in issuing and executing the Agreement, in issuing and executing the RP Retail Unit License Agreement Addendum to Development Agreement, in transmitting and causing to be transmitting instructions for wire transfers, and causing those wire transfers to be made, committed the following "Racketeering Activities," as defined in 18 U.S.C. § 1961(1):

a.     Defendants committed indictable acts under 18 U.S.C.A. § 2314 (relating to interstate transportation of stolen property) by, having devised a scheme to defraud Plaintiffs and for obtaining Plaintiffs' money by means of false or fraudulent pretenses, representations, and/or promises, and in execution of their scheme, transported or caused to be transported in interstate commerce, money in an amount greater than $5,000.

b.     Defendants committed indictable acts under 18 U.S.C.A. § 2315 (relating to interstate transportation of stolen property) by possessing and/or disposing of money in an amount greater than $5,000, and said money having crossed state boundaries after being stolen, unlawfully converted, or taken from Plaintiffs, knowing the same to have been stolen, unlawfully converted, or taken.

c.     Defendants committed indictable acts under 18 U.S.C.A. § 1343 (relating to wire fraud) by, having devised a scheme to defraud and/or obtain Plaintiffs' money by means of false or fraudulent pretenses, representations, or promises, transmitted and/or caused to be transmitted by means of wire, in interstate commerce, writings and signals for the purpose of executing their scheme.

d.     Defendants committed indictable acts under 18 U.S.C.A. § 1341 (relating to mail fraud) by, having devised a scheme to defraud

and obtain Plaintiffs' money by means of false or fraudulent pretenses, representations, or promises, placed matters in a post office or authorized depository for mail matter for the purpose of executing their scheme.

99.    Defendants' Racketeering Activities were conducted to perpetrate a scheme in which they induced the initial and continuing payment of funds by Plaintiffs to Defendant RP.  Defendants perpetrated the scheme by, on several occasions, knowingly or with reckless disregard for the truth, materially misrepresented financial forecasts for Plaintiffs' stores, the nature and legality of the business entities they sold to Plaintiffs, the legal requirements the parties were obligated to comply with, and the disclosures obligations of Defendant RP.

100.    The mailings and wire transactions were either knowingly directed by Defendants or reasonably foreseeable as a result of Defendants' actions in the course of perpetrating their scheme.

101.    The Corporate Defendant, Defendant RP, exists separately from the pattern of racketeering activities described above, as it also purports to offer various goods and services for sale to the general public.

### DEFENDANTS' VIOLATIONS OF 18 U.S.C. § 1962(a), (b), (c), AND (d)

102.    Defendants violated 18 U.S.C. § 1962(a), in that, they have used or invested some or all of the proceeds of or the income derived from their fraudulent conduct to support and perpetuate their above-described criminal enterprise. By way of example and not limitation, upon information and belief, Defendants

diverted investment monies obtained from one or more of Plaintiffs to a pool of funds used to settle fraud claims levied against some combination of Defendants.

103.   Defendants violated 18 U.S.C. § 1962(b), in that, they have maintained, directly or indirectly, an interest in or control of the above-described criminal enterprise through the above-described pattern of racketeering activity.

104.   Individual Defendants violated 18 U.S.C. § 1962(c) in that they were employed by or otherwise associated with the above-described criminal enterprise and directly or indirectly participated in the affairs of the criminal enterprise through the above-described pattern of racketeering activity.   More specifically, Individual Defendants were stakeholders, directors, officers, and/or employees of the Corporate Defendant, Defendant RP, who participated in Defendant RP's operation or management by soliciting and perpetuating investments by way of their fraudulent conduct and benefitted from that conduct.

105.   Defendants violated 18 U.S.C. § 1962(d) in that they conspired with each other to violate 18 U.S.C. §§ 1962(a)-(c) in constructing and perpetuating the fraudulent scheme described above.

106.   Defendants' criminal enterprise is ongoing and will in all likelihood continue in the future unless halted by this or other legal action, as indicated by Defendants' continuing solicitation of franchise opportunities and other goods and services to members of the general public.

216811163.1 59881/324418

107.   Plaintiffs are entitled to recover three times their actual damages, plus costs and attorneys' fees, in accordance with 18 U.S.C. § 1964(c).

**COUNT V – AGAINST DEFENDANT RP**
**[IN THE ALTERNATIVE TO COUNT I]**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT,**
**MICH. COMP. LAWS 445.901, *ETC.* ("MCPA")**

108.   Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

109.   This count is plead in the alternative to Count I, in the event that the Court determines that the at-issue transactions do not meet the definition of a franchise under Michigan law.

110.   Defendant RP offered the Plaintiffs a "business opportunity" within the meaning of Mich. Comp. Laws § 445.902(1)(a).

111.   Accordingly, in the event the Court finds that the Plaintiffs were not operating franchises, the Defendants were engaged in "trade or commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

112.   Plaintiffs paid more than $500 for the stores.   Therefore, Defendant RP has violated Mich. Comp. Laws § 445.903b by failing to provide notice of sale to the State Attorney General.

113.   Defendant RP, through its agents, made various misrepresentation of material facts, including but not limited to the Pre-LOI Representations, the Pre-

Agreement Representations, and Representations that Defendant RP would make all legally required disclosures.

114. As a result of the facts alleged in the preceding paragraphs, Defendants have violated Mich. Comp. Laws § 445.903(1)(n) by, *inter alia*, causing confusion and misunderstanding as to the legal rights, obligations, or remedies of a parties to the Agreement.

115. As a result of the facts alleged in the preceding paragraphs, Defendants have violated Mich. Comp. Laws § 445.903(1)(s) by, *inter alia*, failing to reveal material facts, the omission of which misled and deceived Plaintiffs, and which facts could not reasonably be known by Plaintiffs.

116. As a result of the facts alleged in the preceding paragraphs, Defendants have violated Mich. Comp. Laws § 445.903(bb) by, *inter alia*, making representations of fact and statements of fact material to the transactions such that Plaintiffs reasonably believed the represented or suggested state of affairs to be other than it actually was.

117. As a result of the facts alleged in the preceding paragraphs, Defendants have violated Mich. Comp. Laws § 445.903(cc) by, *inter alia*, failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

118.  As a direct and proximate result of Defendants' deceptive trade practices, as proscribed by MCL §445.903, Plaintiffs have suffered and will continue to suffer damages.

119.  Under the MCPA, Plaintiffs are entitled to recover their actual damages or statutory damages, whichever is greater; together with reasonable attorneys' fees.

### COUNT VI – AGAINST DEFENDANT RP
### COMMON LAW AND STATUTORY CONVERSION UNDER MICH.
### COMP. LAWS § 600.2919a

120.  Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

121.  Defendant RP obtained Plaintiffs' money through the use of a fraudulent scheme.

122.  Defendant RP has committed common law and statutory conversion because its dominion over Plaintiffs' money is wrongfully exerted by Defendant RP and inconsistent with Plaintiffs' rights.

123.  Further, Defendant RP is in knowing receipt of Plaintiffs' converted money.

### COUNT VII – AGAINST ALL DEFENDANTS
### CIVIL CONSPIRACY

124.  Plaintiffs incorporate by reference their allegations stated in the preceding paragraphs as if fully restated here.

216811163.1 59881/324418

125.   Defendants, in combination, wrongfully conspired with one another and acted in concert in the manner described above, with the unlawful purpose of defrauding Plaintiffs, violating the MFIL, violating the Federal Trade Commission Act, violating RICO, committing statutory conversion, and/or violating the MCPA.

126.   Defendants, in combination, wrongfully conspired with one another and acted in concert in the manner described above, using unlawful means, including, *inter alia*, defrauding Plaintiffs, violating the MFIL, violating the Federal Trade Commission Act, violating RICO, committing statutory conversion, and/or violating the MCPA.

127.   As a direct and proximate result of the conspiracy and Defendants' illegal, wrongful, or tortious acts in furtherance of the conspiracy, as described above, Plaintiffs have suffered substantial economic losses.

128.   Defendants are jointly and severally liable to Plaintiffs for their injuries and/or damages.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, and for the following forms of relief:

A.   An order of recession of the Agreement, pursuant to Count I, or otherwise;

B.   A principal judgment in the amount of $3,172,311.55, plus all consequential and incidental damages;

C.   A trebled judgment in the principal amount of at least $9,516,934.65, for Defendants' violation of the RICO Act;

D.   Exemplary damages as-warranted by the intentional and malicious actions of Defendants;

E.   All applicable interest, including without limitation that awardable under the MFIL;

F.   All applicable costs and attorneys' fees, including without limitation those recoverable under the MFIL, the RICO Act, and the MCPA; and

G.   Such further or different relief deemed just.


Respectfully submitted,

CLARK HILL PLC

Date:  January 25, 2018            By:   /s/ *Jordan S. Bolton*
                                   Jordan S. Bolton (P66309)
                                   Karl J. Edward Fornell (P76327)
                                   151 S. Old Woodward Ave., Suite 200
                                   Birmingham, MI 48009
                                   (248) 988-1839
                                   jbolton@clarkhill.com
                                   *Attorneys for Plaintiffs*

## **VERIFICATION**

I, Mike Shehadi, as Member of each entity named a Plaintiff herein, state that: (i) I am authorized to make this verification on behalf of Plaintiffs; (ii) I have personal knowledge of the facts alleged in this Verified Complaint; (iii) I am competent to testify to these facts if called upon to do so; and (iv) to the best of my knowledge, belief, and understanding, the factual allegations contained in the Verified Complaint are true and accurate.

_____

**Date:** 01/24/2018
_____