## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE ROASTING PLANT OF
MICHIGAN JV, LLC, a Michigan
limited liability company; ROASTING
PLANT OF DEARBORN HEIGHTS,
LLC, a Michigan limited liability
company; ROASTING PLANT OF ANN
ARBOR, LLC, a Michigan limited
liability company; ROASTING PLANT
OF DEARBORN, LLC, a Michigan
limited liability company; and
ROASTING PLANT OF SOUTHFIELD,
LLC, a Michigan limited liability
company,

          Plaintiffs,

vs.

ROASTING PLANT, INC., a Delaware
corporation; MIKE CASWELL, an
individual; and THOMAS
HARTOCOLLIS, an individual,

          Defendants.

Case No. 2:18-cv-10295

Hon. Bernard A. Friedman
Magistrate Judge R. Steven
Whalen

---

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Roasting Plant Inc, ("Roasting Plant"), Michael Caswell and Thomas Hartocollis

(collectively, "Defendants"), respectfully move this Court to dismiss the Complaint

of Roasting Plant of Michigan JV LLC ("RPM JV"), Roasting Plant of Dearborn

Heights, LLC ("RP DH"), Roasting Plant of Ann Arbor, LLC ("RP AA"), Roasting Plant of Dearborn, LLC ("RP Dearborn"), and Roasting Plant of Southfield, LLC's ("RP Southfield") (collectively "Plaintiffs") Plaintiffs' Complaint.

Plaintiffs' Complaint should be dismissed and this Court should order that any arbitration be filed and take place in New York, NY based on the mandatory arbitration clause in the Development Agreement underlying Plaintiffs' claims.  In the alternative, the Court should dismiss this case pursuant to Federal Rule 12(b)(6) with leave to refile in the Southern District of New York because the Development Agreement mandates that any claims brought by Plaintiffs that cannot be arbitrated are to be filed in a court in New York, NY.  Finally, Plaintiffs' Complaint should be dismissed for failing to state a claim upon which relief can be granted pursuant Federal Rule of Civil Procedure 12(b)(6).

The reasons for this motion are set forth in the accompanying brief in support.

Pursuant to L.R. 7.1(a)(1), Defendants sought concurrence after a conference between the parties' attorneys, during which the nature of the motion and its legal basis were explained.  Plaintiffs declined to concur in the relief requested.

Respectfully submitted,

/s/ *Amy E. McCracken*
Amy E. McCracken (P44362)
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6700
aemccracken@duanemorris.com
*Counsel for Defendants*

*Of Counsel*:

Alan C. Kessler (PA Bar No. 22230)
(*application for admission to be filed*)
Jessica Priselac (PA Bar No. 208524)
(*application for admission pending*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103
*Counsel for Defendants*

DM1\8531743.1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE ROASTING PLANT OF
MICHIGAN JV, LLC, a Michigan
limited liability company; ROASTING
PLANT OF DEARBORN HEIGHTS,
LLC, a Michigan limited liability
company; ROASTING PLANT OF ANN
ARBOR, LLC, a Michigan limited
liability company; ROASTING PLANT
OF DEARBORN, LLC, a Michigan
limited liability company; and
ROASTING PLANT OF SOUTHFIELD,
LLC, a Michigan limited liability
company,

Case No. 2:18-cv-10295

Hon. Bernard A. Friedman
Magistrate Judge R. Steven
Whalen

        Plaintiffs,

vs.

ROASTING PLANT, INC., a Delaware
corporation; MIKE CASWELL, an
individual; and THOMAS
HARTOCOLLIS, an individual,

        Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND...................................................................................3

LEGAL STANDARDS ..........................................................................................5

ARGUMENT .........................................................................................................7

I.   PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THE
     DEVELOPMENT AGREEMENT DICTATES THAT THE CLAIMS
     MUST BE ARBITRATED OR OTHERWISE TRIED IN NEW
     YORK ...........................................................................................................7

     A.   Each of the claims fall within the scope of the Development
          Agreement's arbitration provision. .....................................................8

     B.   The arbitration clause should be enforced against all Plaintiffs. ........10

     C.   The arbitration clause can be invoked by Defendants Caswell
          and Hartocollis. ................................................................................12

II.  IN THE ALTERNATIVE, PLAINTIFFS' CLAIMS SHOULD BE
     DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO MEET
     THE PLEADING REQUIREMENTS OF RULES 8(A)(2), 9(B) AND
     12(B)(6) ......................................................................................................13

     A.   On a global level, Plaintiffs have not sufficiently pleaded how
          each Defendant allegedly harmed each Plaintiff, including
          failing to identify the who, when, and why for each of its
          claims.................................................................................................13

     B.   An individualized analysis similarly demonstrates that each
          claim, as pleaded, fails to state a claim upon which can be
          granted. ..............................................................................................16

          1.   **Plaintiffs fail to state a claim for fraud and,
               consequently, for conversion.**..................................................16

          2.   **Plaintiffs have failed to state a claim for RICO.** ..................18

3.    **Plaintiffs have failed to state a claim under the Michigan Franchise Investment Law.**...................................21

4.    **To the extent Plaintiffs' claims are based on purported violations of the FTCA, the claims must be dismissed.** ...............................................................23

5.    **Plaintiffs are sophisticated commercial entities and therefore barred from bringing claims under the Michigan Consumer Protection Act.**...................................24

6.    **Plaintiffs cannot allege a civil conspiracy claim where there is no underlying tort.**......................................24

CONCLUSION .................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003), *aff'd*, 693 N.W.2d 358 (Mich. 2005)) .................................................................................26

*Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990) .........................................11

*Ashcroft v Iqbal*, 556 U.S. 662 (2009) ...........................................................6, 14, 16

*Atuahene v. City of Hartford*, 2001 WL 604902 (2d Cir. May 31, 2001) ...................................................................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................6, 14, 16

*Berent v. Kemper Corp.*, 780 F. Supp. 431 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1291 (6th Cir. 1992) ..........................................................24

*Bero Contracting & Dev. Corp. v. Vierhile*, 796 N.Y.S.2d 808 (N.Y. App. Div. 2005) ............................................................................18

*Binder v. Med. Shoppe Int'l, Inc.*, 2010 WL 2854308 (E.D. Mich. July 20, 2010).............................................................................12

*Bowers v. Wynne*, 615 F.3d 455 (6th Cir. 2010).............................................15

*Bowie v Clear Your Debt, LLC*, 523 F. App'x 315 (6th Cir. 2013) ......................13

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) ..........................16

*Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993) .................................................17

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990) ............................24

*DirectTV, Inc. v. Milliman*, 2003 WL 23892683 (E.D. Mich., Aug. 26, 2003) ...................................................................................................23

*Flint Warm Air Supply Company v. York International Corporation*, 115 F. Supp. 2d 820 (E.D. Mich. 2000) ...........................................10

*FTC v. Owens–Corning Fiberglas Corp.*, 853 F.2d 458 (6th Cir. 1988) ...................................................................................22

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) ...................................14

*Hall Am. Ctr. Assoc., Ltd. P'ship v. Dick*, 726 F. Supp. 1083 (E.D. Mich. 1989) ......................................................................................24

*Heaton v. Bank of Am. Corp.*, 2011 WL 3112325 (E.D. Mich. July 26, 2011) ......................................................................................22

*Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742 (6th Cir. 1992) .................24

*Huffman v. Hilltop Cos., LLC*, 747 F.3d 391 (6th Cir. 2014).....................................9

*Hyundai Am. Tech. Ctr. v Eaton Corp.*, 1997 U.S. Dist. LEXIS 21389 (E.D. Mich. Dec. 18, 1997).........................................................................25

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003) .................... 8, 11-13

*Johnson v. Ventra Group, Inc.*, 191 F.3d 732 (6th Cir. 1999)................................19

*Kaminski v. Coulter*, 865 F.3d 339 (6th Cir. 2017) ..................................................6

*Leoni v. Rogers*, 719 F. Supp. 555 (E.D. Mich. 1989) ..............................................8

*Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190 (1991).......................................9

*Michigan Division-Monument Builders v. Michigan Cemetery Association*, 458 F. Supp. 2d 474 (E.D. Mich. 2006), *aff'd* 524 F.3d 726 (6th Cir. 2008)....................................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)...................................................................................8

*Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786 (S.D. Ohio 2000) ......................................................................................22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)......................................................................................8

*Murray v. Chrysler Group, LLC*, 2013 WL 5340782 (E.D. Mich. Sept. 23, 2013) ......................................................................16

*N. Warehousing, Inc. v. Dep't of Educ.*, 714 N.W.2d 287 (Mich. 2006) ...............19

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) .......................................3

*RP Equity Investments, LLC v. Roasting Plant, Inc.*, C.A. No. 2018-0021-SG .................................................................................................2

*S.E.C. v. Conaway*, 2009 WL 1606655 (E.D. Mich. June 8, 2009) .........................7

*In re Sagent Tech., Inc.,* 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..........................20

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006) ...................7

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000) ..................................................8

*Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ....................12

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008) ..................................................17

*In re Travel Agent Commission Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009) ...................................................................................................16

*United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006)..........................................23

*Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793 (E.D. Mich. 1996) ........................8

*Wallace v. Wayne Cty.*, 2012 WL 12925717 (E.D. Mich. Nov. 14, 2012) ...................................................................................................15

*Washington v. Hutchinson*, 2009 WL 2923162 (E.D. Mich. Sept. 10, 2009) ...................................................................................................7

*Willacy v. Marotta*, 683 Fed. Appx. 468, 2017 WL 1104426 (6th Cir. Mar. 24, 2017)...................................................................................11

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003) ................................17

## Statutes

18 U.S.C.A. § 2314 ....................................................................................................23

Federal Arbitration Act ........................................................................................*Passim*

Federal Trade Commission Act .................................................................... 4, 21-22

MICH. COMP. LAW § 445.1502(3)(a)–(b) ................................................21

MICH. COMP. LAWS ANN. § 445.1531(1) ................................................21

MICH. COMP. LAWS § 445.1502(3) ........................................................20

MICH. COMP. LAWS § 445.1507(a) ........................................................21

MICH. COMP. LAWS § 445.1531(3) ........................................................21

Michigan Consumer Protection Act................................................4, 11, 25

Racketeer Influenced and Corrupt Organizations Act.....................*Passim*

**Federal Rules**

FED. R. CIV. P. 8(a)(2) ......................................................................*Passim*

FED. R. CIV. P. 9(b)............................................................................*Passim*

FED. R. CIV. P. 12(b)(6) ....................................................................*Passim*

FED. R. EVID. 201(b)................................................................................15

**Other Authorities**

16 C.F.R. § 436.5 ....................................................................................21

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1988) ........................19

## STATEMENT OF THE ISSUES PRESENTED

Whether the Court should enforce the mandatory arbitration clause in the Development Agreement underlying Plaintiffs' claims and dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and further order that any arbitration of Plaintiffs' claims be filed and take place in New York, NY as mandated in the Development Agreement?

Defendants say "yes."

Whether, in the alternative, the Court should dismiss this case pursuant to Federal Rule 12(b)(6) with leave to refile in the Southern District of New York because the Development Agreement mandates that any claims brought by Plaintiffs that cannot be arbitrated are to be filed in a court in New York, NY?

Defendants say "yes."

Whether, in the alternative, the Court should dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim upon which relief may be granted?

Defendants say "yes."

## <u>Controlling Authorities</u>

Federal Rule of Civil Procedure 12(b)(6) and The Federal Arbitration Act

## PRELIMINARY STATEMENT

Defendant Roasting Plant, Inc. ("Roasting Plant") is a Delaware corporation with its principal office and place of business located in New York, NY.  Roasting Plant, utilizing its state of the art roasting technology called Javabot, delivers a just-roasted, brewed-by-the-cup experience to its customers in each of its cafés.  On or about August 1, 2016, Mike Shehadi, through a limited liability company he owns and controls, Plaintiff Roasting Plant of Michigan JV LLC ("RPM JV"), entered into a Development Agreement with Roasting Plant (the "Development Agreement").  *See* Ex. A to Plaintiffs' Compl.; Compl. ¶ 20.  Under the terms of the Development Agreement, RPM JV was to develop seven Roasting Plant cafés in Michigan over a two-year period.  *See* Ex. 2 to Development Agreement.  RPM JV was to have developed five Roasting Plant cafés as of the date of this motion (*id.*), but has only developed two, in clear breach of the Development Agreement.

Although Plaintiffs' claims are all related to and arise out of the Development Agreement, and despite the fact that the Development Agreement is referenced throughout Plaintiffs' Complaint, Plaintiffs have notably failed to acknowledge, much less follow, the Development Agreement's mandatory arbitration and forum selection clauses, which clearly require that Plaintiffs bring their purported claims in arbitration in New York, NY.  There is only one reason for this apparent "oversight"—to bring more attention to Plaintiffs' inflammatory and scurrilous

claims (for which, as outlined below, they have pleaded no factual support) than the suit would otherwise garner in an arbitration.  In short, Shehadi—a sophisticated, accredited investor[1]—must believe that a "scorched earth" litigation strategy combined with negative media coverage[2] will cause Roasting Plant—a growth-stage company—to refrain from enforcing its contractual rights against him and the various entities he controls and accede to the outrageous demands made in Plaintiffs' Complaint.

Plaintiffs have now breached yet another provision of the Development Agreement by bringing suit in this Court despite the fact that they contractually promised to arbitrate these claims or file them in another court.  For the reasons outlined herein, Plaintiffs' preference for this forum cannot trump their obligation to

---

[1] Although not alleged in this Complaint, it is undisputed that another entity Shehadi owns and controls, RP Equity Investments, LLC ("RP Equity"), invested $1,500,000 in Roasting Plant in December 2016.  RP Equity has filed a books and records suit against Roasting Plant in an action currently pending before the Delaware Court of Chancery (*RP Equity Investments, LLC v. Roasting Plant, Inc.*, C.A. No. 2018-0021-SG).  That suit was filed just weeks before the instant action, and Roasting Plant has asserted several defenses, including that the company has already fulfilled its statutory obligations to RP Equity and that RP Equity and Shehadi are seeking additional records for an improper purpose.  The case is currently in the discovery phase and is scheduled for a one-day trial in April 2018.

[2] For example, less than 24 hours after the Complaint was filed, Roasting Plant was contacted by a Detroit Free Press reporter for a response to Shehadi's allegations.  Although Defendants denied all of the allegations, the story, which included information that is not in the Complaint, was published under the misleading headline "Franchisee sues Roasting Plaint for $9.5M, alleging fraud."  *See* https://www.freep.com/story/money/business/2018/01/27/roasting-plant-coffee-sued-fraud/1069267001/.

arbitrate these claims in New York as required by the Development Agreement, and the Complaint should be dismissed on that basis alone.  In the alternative, the Court should dismiss this case with leave to refile in the Southern District of New York because the Development Agreement mandates that any claims brought by Plaintiffs that cannot be arbitrated are to be filed in New York, NY.  Finally, Plaintiffs' claims should be dismissed for failure to plead any cause of action upon which relief can be granted pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b) and 12(b)(6).

## FACTUAL BACKGROUND

This action involves the claims of RPM JV, Roasting Plant of Dearborn Heights, LLC ("RP DH"), Roasting Plant of Ann Arbor, LLC ("RP AA"), Roasting Plant of Dearborn, LLC ("RP Dearborn"), and Roasting Plant of Southfield, LLC's ("RP Southfield") (collectively "Plaintiffs") that Defendants engaged in wrongful conduct related to, and arising out of, the Development Agreement between Plaintiff RPM JV and Defendant Roasting Plant.  Although the parties to the Development Agreement are RPM JV and Roasting Plant, Plaintiffs allege that the agreement "inured to the benefit of [all] Plaintiffs."  Compl. ¶ 27.

Plaintiffs have asserted several claims arising out of the Development Agreement against Roasting Plant and its Chief Executive Officer, Michael Caswell, and its Chief Marketing Officer, Thomas Hartocollis, including violations of the Federal Trade Commission Act ("FTCA"), the Michigan Franchise Investment Law

("MFIL"), the Michigan Consumer Protection Act ("MCPA"), racketeering, fraud and conspiracy.  The Development Agreement clearly reflects the parties' intent as to how any disputes arising out of the Development Agreement would be resolved. Specifically, Section 18 of the Development Agreement, attached as Exhibit A to the Complaint, provides:

> Claims Subject to Arbitration. Any claim between the parties hereto arising out of or related to this Agreement or the parties' operations under this Agreement will be submitted to final and binding arbitration before the American Arbitration Association ("AAA") as the sole and exclusive remedy, unless expressly excepted from arbitration under this Section 18.[3]
> . . .
>
> The arbitration shall be administered by the AAA office nearest to the Company's principal offices at the time the demand for arbitration is filed and all hearings shall take place in the county in which the

---

[3] There is a limited carve-out, not applicable here, for claims that must be litigated rather than arbitrated.  However, even in those circumstances, such claims, if asserted by Plaintiffs, are to be brought in New York, NY:

None of the following claims is subject to arbitration under this Agreement: (a) claims involving the propriety of any termination of this Agreement or Developer's or its Affiliated Operator's right to operate an RP Retail Unit; (b) claims involving actual or threatened disclosure or misuse of Trade Secrets; (c) claims involving the ownership, validity or use of the Marks; (d) claims to enjoin a Transfer alleged to be in violation of this Agreement; or (e) claims by Company to enforce any noncompetition, confidentiality or non-solicitation obligations. The parties agree that any judicial actions that either party may file: (a) shall, if filed by Developer, be filed only in the federal or state court having jurisdiction where the Company's principal offices are located at the time suit is filed (currently New York County, New York) . . . .

Section 18(B)(1).

Company's principal offices are located at the time the demand for
arbitration is filed.

Development Agreement, Section 18(B)(2)–(3).

In spite of the fact that this provision requires that Plaintiffs' claims be brought
in arbitration in New York, NY, Plaintiffs filed this suit in this Court on January 25,
2018.

## <u>LEGAL STANDARDS</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint
contain "a short and plain statement of the claim showing that the pleader is entitled
to relief[.]"  Applying this standard, the Supreme Court has articulated the threshold
necessary to plead  a sufficient claim to withstand scrutiny under a Rule 12(b)(6)
motion.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *Ashcroft v
Iqbal*, 556 U.S. 662, 678–79 (2009).  "To survive a motion to dismiss, a complaint
must contain sufficient factual matter, accepted as true, to 'state a claim to relief that
is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
A claim is said to be plausible if the complaint contains "factual content that allows
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Id.* at 678.  Plausibility will not be found where the complaint
"pleads facts that are 'merely consistent with' a defendant's liability" or where the
complaint is made up of "'naked assertions' devoid of 'further factual
enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557). Plausibility, not sheer

possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556–57; *Iqbal*, 556 U.S. at 679.

In considering a Rule 12(b)(6) motion to dismiss, all well-pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). But, as only *facts* must be taken as true, the court will "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of the truth." *Iqbal*, 556 U.S. at 679. It is only then that the court can view the well-pleaded facts, "assume their veracity and [] determine whether they plausibly give rise to an entitlement to relief." *Id.* In other words, a complaint must be dismissed unless it (1) "contains factual allegations, as opposed to legal conclusions" and (2) asserts well-pleaded facts that "show a 'plausible' claim for relief[.]" *Washington v. Hutchinson*, 2009 WL 2923162, at *3 (E.D. Mich. Sept. 10, 2009) (internal citations omitted).

This pleading standard is heightened when a plaintiff's complaint is based on allegations of fraud, as a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard "serves an important function in fraud cases" by ensuring defendants receive "adequate notice . . . of the precise charges against which they are required to defend themselves." *S.E.C. v. Conaway*, 2009 WL 1606655, at *1 (E.D. Mich. June 8, 2009) (requiring fraud claimants to identify each statement

within each document that they contend to have been a misrepresentation). Furthermore, the "district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876, 876 (6th Cir. 2006) (affirming the district court's dismissal of the complaint for failure to plead allegations of fraud "with sufficient particularity," as required by Rule 9(b)).

A fraud claim must be dismissed unless, *at a minimum*, the claimant "allege[s] the time, place, and content of the alleged misrepresentation[(s)]" underlying the claim as well as "[t]he identity of the person making the alleged misrepresentations . . . [and] what that person gained by the misrepresentation." *Leoni v. Rogers*, 719 F. Supp. 555, 568 (E.D. Mich. 1989); *see also Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 799–80 (E.D. Mich. 1996) (dismissing fraud claims for failure to provide specificity as to the "time, place and misrepresentation(s)" underlying the plaintiffs' fraud claim).

## **ARGUMENT**

### I. **PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THE DEVELOPMENT AGREEMENT DICTATES THAT THE CLAIMS MUST BE ARBITRATED OR OTHERWISE TRIED IN NEW YORK**

"A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v.*

7

*First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2).  The

Federal Arbitration Act "is at bottom a policy guaranteeing the enforcement of

private contractual agreements" arising from a "'liberal federal policy favoring

arbitration agreements[.]'"  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

*Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Accordingly, "[w]hen asked by a party to

compel arbitration under a contract, a federal court must determine whether the

parties have agreed to arbitrate the dispute at issue."  *Stout v. J.D. Byrider*, 228 F.3d

709, 714 (6th Cir. 2000).

    As outlined below, the parties agreed to arbitrate this dispute.  Specifically,

(1) each of the claims at issue falls within the scope of the arbitration clause; (2) the

clause can be enforced against all plaintiffs under the principle of estoppel, and (3)

the individual defendants are permitted to invoke the arbitration clause because they

are agents of Roasting Plant.

### A.    Each of the claims fall within the scope of the Development Agreement's arbitration provision.

    Where a contract contains a broadly-worded arbitration clause, there is a

presumption of arbitrability such that "an order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute."  *Litton*

*Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 209 (1991) (internal quotation marks

and citations omitted).  An arbitration clause is considered "broad", as is the case here, when the clause provides that any claim or dispute "'arising out of or relating to'" that agreement will be submitted to arbitration.  *See Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014) (quoting the arbitration clause in the underlying agreement).  Further, any doubts as to the parties' intentions or any contractual ambiguities should be resolved in favor of arbitration.  *Id*.

Here, Section 18 of the Development Agreement, attached as Exhibit A to the Complaint and the agreement upon which Plaintiffs' claims are all based, provides:

> <u>Claims Subject to Arbitration.</u> *Any claim* between the parties hereto ***arising out of or related to this Agreement or the parties' operations under this Agreement*** will be submitted to final and binding arbitration before the American Arbitration Association ("AAA") as the sole and exclusive remedy, unless expressly excepted from arbitration under this Section 18.[4]

Development Agreement, Section 18(B)(2) (emphasis added).

This broadly-worded provision encompasses each and all of the claims in Plaintiffs' Complaint.  Specifically, each and all counts arise from or are related to the Development Agreement:

- Counts I & II allege violations of the Michigan Franchise Investment

---

[4] Again, there is a limited carve-out for claims, if asserted by Plaintiffs, that must be brought in court rather than arbitrated; however, even in those circumstances, the claims are to be brought in New York, NY.  *See* Development Agreement, Section 18(B)(1).  Accordingly, to the extent Plaintiffs argue that Plaintiffs' claims fall within the carve-out, they have accomplished nothing by filing suit in this Court as any such claims must be filed in a New York court.

Law as well as Federal Trade Commission regulations that govern franchises, which necessarily turn, in the first instance, on whether the Development Agreement does, in fact, create a franchise relationship between any of the  parties.  *See Flint Warm Air Supply Company v. York International Corporation*, 115 F. Supp. 2d 820, 828 n. 4 (E.D. Mich. 2000) ("[t]o the extent that Plaintiff wishes to pursue its construction of the [agreement] as consisting a 'franchise,' this is a matter for the arbitrators to decide as it is clearly a 'claim [] arising out of or relating to' the [agreement]."); *Prude v McBride Research Laboratories, Inc*, 2008 U.S. Dist. LEXIS 9440, at *15-16 (E.D. Mich, 2008) (holding that Federal Arbitration Act preempted FMIL provisions prohibiting out-of-state arbitration).

- Count III alleges fraud in the form of representations Plaintiffs purportedly relied upon when deciding whether to enter into the Development Agreement, and Count VI alleges conversion based on the fraudulent scheme Defendants allegedly perpetrated through the agreement.

- Count IV alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), including racketeering activities related to Defendants' purported representations about the Development Agreement.  *See Willacy v. Marotta*, 683 Fed. Appx. 468, 2017 WL 1104426, at *8 (6th Cir. Mar. 24, 2017)(emphasizing that the presumption favoring arbitration applies to RICO claims).

- Count V alleges violations of the Michigan Consumer Protection Act, and alleges that Defendants offered Plaintiffs a "business opportunity" under the MCPA through the Development Agreement.

- Count VII alleges civil conspiracy to commit each of the aforementioned wrongful acts, all of which, as set forth above, arise out of the Development Agreement.

**B.    The arbitration clause should be enforced against all Plaintiffs.**

Plaintiffs RP DH, RP AA, RP Dearborn, and RP Southfield are nonsignatories

to the Development Agreement and, because of the vague and conclusory nature of

10

Plaintiffs' Complaint, it is not entirely clear how any of these Plaintiffs is distinct from the other. Although these Plaintiffs are nonsignatories to the Development Agreement, it is well-settled law that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch,* 315 F.3d at 629 (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir. 1990)). Specifically, a nonsignatory can be bound by an agreement to arbitrate under any or all of the following five theories: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id.* (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

Here, Plaintiffs have specifically pleaded that "Plaintiff [RPM JV] entered into the Roasting Plant Coffee Development Agreement with Defendant [Roasting Plant, Inc.]. The Agreement inured to the benefit of Plaintiffs [i.e., RP DH, RP AA, RP Dearborn, and RP Southfield]." Compl., ¶ 27. As Plaintiffs have fashioned their claims in a way that presupposes that the benefits of the Development Agreement "inure" to each and that they have standing to bring claims that arise from the agreement, they are estopped from repudiating the arbitration provision contained therein. *Binder v. Med. Shoppe Int'l, Inc.*, 2010 WL 2854308, at *6 (E.D. Mich. July 20, 2010) ("Estoppel arises when a nonsignatory who obtains a direct contractual benefit seeks to disavow that agreement's arbitration clause."). [5]

---

[5] Furthermore, Plaintiffs' failure to plead any meaningful distinction between each

### C.    The arbitration clause can be invoked by Defendants Caswell and Hartocollis.

Similarly, although Caswell and Hartocollis are not parties to the Development Agreement, they can invoke the Development Agreement's arbitration provision.  "[W]here there is an agency relationship between a signatory and a nonsignatory, the nonsignatory may compel arbitration."  *Bowie v Clear Your Debt, LLC*, 523 F. App'x 315, 317 (6th Cir. 2013) (citing *Javitch*, 315 F.3d at 629).  As set forth in Plaintiffs' Complaint, Caswell is the Chief Executive Officer and a director of signatory Roasting Plant, and Hartocollis is Roasting Plant's Chief Marketing Officer.  Compl. ¶¶ 7, 9.  Both were acting on behalf of Roasting Plant in their interactions with Plaintiffs, and Plaintiffs have not, and could not have, pleaded otherwise.  Accordingly, both of the individual defendants can compel arbitration of Plaintiffs' claims against them.  *Id*.

In summary, Plaintiffs are obligated to arbitrate these claims in New York under the Development Agreement, and the Complaint should be dismissed on that basis alone.  In the alternative, the Court should dismiss this case pursuant to Rule 12(b)(6) with leave to refile in the Southern District of New York because the

---

entity, and its admission that "Mike Shehadi ("Shehadi") owns and controls Plaintiffs," indicates the non-signatories are possibly alter egos of either RPM JV or Shehadi.  Compl. ¶ 20.

Development Agreement mandates that any claims brought by Plaintiffs that cannot be arbitrated are to be filed in New York, NY.[6]

## II.   IN THE ALTERNATIVE, PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO MEET THE PLEADING REQUIREMENTS OF RULES 8(A)(2), 9(B) AND 12(B)(6)

Plaintiffs' Complaint should also be dismissed on the alternative grounds that Plaintiffs' claims fail to meet the pleading standards of Federal Rules of Civil Procedure 8(a)(2), 9(b) and 12(b)(6).

### A.   On a global level, Plaintiffs have not sufficiently pleaded how each Defendant allegedly harmed each Plaintiff, including failing to identify the who, when, and why for each of its claims.

Plaintiffs' Complaint does not satisfy Rule 8(a)(2) or the pleading standards set forth in *Twombly* and *Iqbal* in two distinct ways.

First, Plaintiff impermissibly lumps together all Plaintiffs and all Defendants throughout the Complaint without properly differentiating between and among them.  *See Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together multiple defendants in one allegation fails to meet the notice requirements under Rule 8(a)(2)); *see also Atuahene v. City of Hartford*, 2001 WL 604902, at *1 (2d Cir. May 31, 2001) ("By lumping all the defendants together in

---

[6] *See Wong v. Partygaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009) (mandatory forum selection clauses should enforced under Fed. R. Civ. P. 12(b)(6)).

each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy this minimum standard . . . .").

As previously noted, Plaintiffs RP DH, RP AA, RP Dearborn, and RP Southfield are nonsignatories to the Development Agreement, and because of the vague and conclusory nature of Plaintiffs' Complaint, it is not entirely clear how, as currently pleaded, any of these Plaintiffs is separate and distinct from each other or Shehadi. Instead, each of Plaintiffs' allegations lumps together each of the Plaintiffs and/or each of the Defendants, making it impossible for Defendants and this Court to discern who among them purportedly took a particular action, and which of the Plaintiffs allegedly suffered what claimed injury from which of the Defendants' actions. This is particularly problematic when combined with Plaintiffs' failure to provide temporal limitations to the majority of its allegations. For example, Plaintiffs' fraud claim (Count III) is based on their allegation that:

> **Defendants** intentionally made false representations of material facts to **Plaintiffs**, including but not limited to the Pre-LOI Representations, the Pre-Agreement representations, and the representation that Defendant RP would make all required disclosures "prior to entering into a License Agreement for any RP Retail Unit," as alleged in paragraph 43, supra.

Compl. ¶ 82 (emphasis added). According to the Complaint, a Letter of Intent ("LOI") was executed at the end of March 2016, meaning that any "Pre-LOI Representations" would have had to occurred on or before that time. Compl. ¶ 27. However, it would have been impossible for any Defendant to make any

representation, false or otherwise, to any Plaintiff in March 2016 or earlier because, according to the Michigan Secretary of State, no Plaintiff was in existence at that time.[7]

In short, Plaintiff's Complaint alleges a series of representations made by "Defendants" in support of a purported conspiracy which allegedly harmed "Plaintiffs" in some manner. The Complaint provides no specificity to support the fraud, conspiracy, RICO and other claims, and its allegations indiscriminately embrace all "Plaintiffs" and all "Defendants" in a manner that is "precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." *In re Travel Agent Commission Antitrust Litig*., 583 F.3d 896, 905 (6th Cir. 2009).

Second, the bulk of the Complaint is a series of labels and conclusions and contains virtually no facts that would potentially support Plaintiffs claims. *Iqbal* emphasizes that a complaint must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. Detailed pleading is

---

[7] Plaintiff RPM JV was organized on August 2, 2016; RP Dearborn Heights was organized on August 22, 2016; RP AA was organized on October 18, 2016; RP Southfield was organized on January 20, 2017; RP Dearborn was organized on June 7, 2017. *See Wallace v. Wayne Cty.*, 2012 WL 12925717, at *1 (E.D. Mich. Nov. 14, 2012) ("A court may also consider, without converting the motion into one for summary judgment, matters of which a court may take judicial notice.") (internal quotation marks and citation omitted); *Bowers v. Wynne*, 615 F.3d 455, 470 (6th Cir. 2010) (noting the court may take judicial notice of information "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") (quoting Fed. R. Evid. 201(b)).

particularly important in a case such as this, where Plaintiffs allege multiple Defendants engaged in a variety of fraudulent, conspiratorial and criminal activities targeted at multiple parties. *See Murray v. Chrysler Group, LLC*, 2013 WL 5340782, at *5 (E.D. Mich. Sept. 23, 2013) (dismissing complaint that offers only bare allegations "without any reference to the 'who, what, where, when, how or why.'") (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)).

Accordingly, Plaintiffs' Complaint should be dismissed because it fails to meet the pleading standards required by Rules 8(a)(2), 9(b) and 12(b)(6).

### B. An individualized analysis similarly demonstrates that each claim, as pleaded, fails to state a claim upon which can be granted.

#### 1. Plaintiffs fail to state a claim for fraud and, consequently, for conversion.

Fraud claims must be pleaded with specificity under the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P*., 2 F.3d 157, 161–62 (6th Cir. 1993)).  Here, Plaintiffs have only identified one "Pre-LOI Representation" and one "Pre-Agreement

Representation" with any level of specificity, both of which were financial projections.  Compl. ¶¶ 22, 25.  Although Plaintiffs state in a highly conclusory manner that each of the projections was "materially false," Plaintiffs have not pleaded any facts that would support this conclusion, and it is not clear from the Complaint what aspects of the projections Plaintiffs believe were false.  Adding to the confusion, Plaintiffs later in the Complaint plead that they have learned "that ***many***, if not all, of the Pre-LOI Representations and Pre-Agreement Representations are false." Compl. ¶ 57 (emphasis added).  Thus, Defendants have no way of knowing what information allegedly provided by Defendants that Plaintiffs contend is false.  Plaintiffs' fraud claims should be dismissed on this basis alone.

In addition, to the extent Plaintiffs claim that they relied on Defendants' prior written or oral representations when entering into the Development Agreement, the Development Agreement contains an integration clause which provides:

> This Agreement includes by reference the recitals, addenda, exhibits, acknowledgements and appendices attached to any of them, and, together, they constitute the sole and entire agreement between the parties with respect to the subject matter of this Agreement and they supersede and terminate all prior agreements and negotiations with respect to the subject matter of this Agreement.

Development Agreement, Section 22(E).  It is black-letter law that a broad integration clause, such as the one found in the Development Agreement, bars Plaintiff from modifying, varying or adding to the terms of the parties' integrated contract.  *See Bero Contracting & Dev. Corp. v. Vierhile*, 796 N.Y.S.2d 808, 809

(N.Y. App. Div. 2005) (merger clause barred claim that integrated contract included an obligation that did not appear in the contract).[8]

The analysis under Michigan law is the same.  In Michigan, where a contract includes a broad integration clause, "[r]eliance on pre-contractual representations is unreasonable as a matter of law . . . ."  *N. Warehousing, Inc. v. Dep't of Educ.*, 714 N.W.2d 287 (Mich. 2006).

Plaintiffs' failure to state a claim for fraud is also fatal to its conversion claim, which relies on Plaintiffs' allegation that Defendant Roasting Plant "obtained Plaintiffs' money through the use of a fraudulent scheme."  Compl. ¶ 121.

Accordingly, Plaintiffs' claims for fraud (Count III) and conversion (Count VI) should be dismissed.

### 2.    Plaintiffs have failed to state a claim for RICO.

As if a baseless fraud claim is not enough to potentially destroy an emerging company, as part of their multi-faceted legal (and apparently media) strategy, Plaintiffs have also brought an outrageous racketeering claim against Defendants. However, "[t]o sustain a RICO claim beyond the pleading stage, plaintiffs must

---

[8]  Under Michigan choice-of-law principles, New York law governs pursuant to the choice-of-law provision contained in the Development Agreement (Section 22(I)). *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 739 (6th Cir. 1999) (applying the analysis adopted from Section 187(2) of the Restatement (Second) of Conflict of Laws (1988)).  However, the sake of completeness Defendants have also analyzed Plaintiff's claim under Michigan law.

allege specific facts establishing each and every element of the claim." *Heaton v. Bank of Am. Corp.*, 2011 WL 3112325, at *6 (E.D. Mich. July 26, 2011). Plaintiffs' Complaint utterly fails to meet this standard.

One element of a RICO claim is that the plaintiff must allege the existence of a viable criminal "predicate" offense. *United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006) (listing elements of RICO claim and requiring the existence of predicate offenses); *DirectTV, Inc. v. Milliman*, 2003 WL 23892683, at *4 (E.D. Mich., Aug. 26, 2003) (dismissing RICO claim in part because the plaintiff failed to allege a predicate act and instead did little more in its complaint than recite the words from the RICO statute). Here, rather than plead any ***facts*** that would support the allegation that a Defendant committed a predicate criminal act—because none exist—Plaintiffs instead include a long list of criminal offenses in a conclusory manner that all "Defendants" committed, for example: [9]

> Defendants committed indictable acts under 18 U.S.C.A. § 2314 (relating to interstate transportation of stolen property) by, having devised a scheme to defraud Plaintiffs and for obtaining Plaintiffs' money by means of false or fraudulent pretenses, representations, and/or promises, and in execution of their scheme, transported or caused to be transported in interstate commerce, money in an amount greater than $5,000.

---

[9] Notably, Plaintiffs have pleaded no facts specific to Thomas Hartocollis regarding any alleged wrongdoing, yet feel it is appropriate to accuse him of criminal activity in a conclusory manner through references to "Defendants."

Compl. ¶ 98(a).

In addition, while the RICO claim contains buzzwords and boilerplate language, it contains very few factual allegations.   Again, Plaintiffs do not distinguish among the Defendants, nor do they identify they who, what, when or why for each of the Defendants.   Plaintiffs' RICO claim should be dismissed due to this lack of particularity because none of the allegations explain—in any operational sense—exactly what any Defendant did wrong and when they did it.   *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990) (affirming dismissal of RICO claim where the plaintiff failed to plead any specific instance of mail fraud or other criminal fraud or how it related to the larger alleged conspiracy).

Further, there is no reference as to how any of the specific Defendants committed any acts of "racketeering activity" contemplated by the RICO statute. Rule 9(b) mandates that the plaintiff plead facts from which fraud may be reasonably inferred as to each individual defendant.   *See Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992); *Hall Am. Ctr. Assoc., Ltd. P'ship v. Dick*, 726 F. Supp. 1083, 1089 (E.D. Mich. 1989).   Specific allegations are required "as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Berent v. Kemper Corp.*, 780 F. Supp. 431, 448 (E.D. Mich. 1991), *aff'd*, 973 F.2d

1291 (6th Cir. 1992).  Plaintiffs' Complaint is completely devoid of any such specificity.

In short, Plaintiffs' conclusory and factually unsupported RICO claim is nothing more than an unfair attempt to damage the Defendants' good names in the marketplace in order to force them to capitulate to the outrageous demands in Plaintiffs' Complaint.  Accordingly, Plaintiffs' RICO claims should be dismissed for failure to state a claim.

### 3.   Plaintiffs have failed to state a claim under the Michigan Franchise Investment Law.

Plaintiffs have failed to sufficiently plead that a franchise relationship even exists between any of the Plaintiffs and any of the Defendants, let alone sufficiently plead a violation of the MFIL that any of the Plaintiffs would have standing to bring. Pursuant to Mich. Comp. Law § 445.1502(3), a "franchise" is defined as a contract or agreement, either express or implied, whether oral or written, between two or more persons, and to which all of the following apply:

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor.

(b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate.

(c) The franchisee is required to pay, directly or indirectly, a franchise fee.

As previously discussed with respect to Plaintiffs' fraud claims, Plaintiffs' MFIL claims make general allegations regarding all "Plaintiffs" and all "Defendants" such that it is impossible for each Defendant to determine with which of the Plaintiffs each allegedly has a franchise relationship with, which of the Plaintiffs it injured, and when such injury occurred. *See In re Sagent Tech., Inc.,* 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."). This problem is particularly acute when attempting to determine the meaning of, and defend against, allegations such as the following, which Plaintiffs have pleaded in support of Count I:

> Pursuant to Mich. Comp. Laws § 445.1531(3), Defendants' violation of Mich. Comp. Laws § 445.1507a [related to notices required when selling a franchise] renders them liable for the damages caused by the noncompliance and Plaintiffs are entitled to damages and/or rescission and restitution under Mich. Comp. Laws Ann. § 445.1531(1).

Compl. ¶ 73 (emphasis added). Which Defendants failed to give notice to which Plaintiffs? Which Plaintiffs suffered damages? What was the nature of said damages? When did the violation occur?[10]

---

[10] Again, timing is particularly important in order for Defendants to properly defend against Plaintiffs' contention that the Development Agreement is the franchise agreement at issue, as many of the Plaintiffs did not even exist until several months after the Development Agreement was executed. For example, RP Southfield was

Furthermore, while Plaintiffs make vague and conclusory allegations which are essentially recitals of Mich. Comp. Law § 445.1502(3)(a)–(b), Plaintiffs have failed to even make a cursory recitation of the third element, as none of the Plaintiffs have pleaded that they paid any of the Defendants a franchise fee.  Accordingly, Plaintiffs claims under the MFIL (Counts I and II) must be dismissed.

> **4.    To the extent Plaintiffs' claims are based on purported violations of the FTCA, the claims must be dismissed.**

Plaintiffs' Complaint references purported violations of the FTCA, and bases its claim in Count II, in part, on 16 C.F.R. § 436.5, one of the FTCA's implementing regulations.   However, it is well-established that the FTCA does not provide a private cause of action.  *Morales v. Walker Motors Sales, Inc*., 162 F. Supp. 2d 786, 790 (S.D. Ohio 2000) ("Courts have uniformly held that a private right of action does not exist under § 5 of the FTCA.") (citing cases from the Second, Fifth, Ninth, Tenth, and D.C. Circuits, as well as the Western District of Kentucky and Southern District of Ohio); *see FTC v. Owens–Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988) ("USR may not, as a private party, invoke the jurisdiction of the federal courts to enforce the Federal Trade Commission Act [because] Congress has clearly limited the invocation of jurisdiction under the FTC Act to the Commission

---

organized on January 20, 2017 and RP Dearborn was organized on June 7, 2017.

itself."). Therefore, to the extent Count II of the Complaint purports to bring an action on the basis of a violation of any FTCA regulation, it should be dismissed.

> **5.    Plaintiffs are sophisticated commercial entities and therefore barred from bringing claims under the Michigan Consumer Protection Act.**

Under the MCPA, the trade or commerce at issue must be related to "a business providing goods, property, or service ***primarily for personal, family, or household purposes***." Mich. Comp. Laws § 445.902(g). Here, the alleged transactions between the parties are completely commercial in nature and, pursuant to the Development Agreement, are between commercial entities, thereby falling outside the scope of the MCPA. *See Hyundai Am. Tech. Ctr. v Eaton Corp.*, 1997 U.S. Dist. LEXIS 21389, at *5 (E.D. Mich. Dec. 18, 1997) ("[S]ophisticated commercial entities [are] not in need of the Act's protections."). Accordingly, Plaintiffs' MCPA claim should be dismissed for failure to state a claim.

> **6.    Plaintiffs cannot allege a civil conspiracy claim where there is no underlying tort.**

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club  Ins. Ass'n*, 670  N.W.2d  569, 580 (Mich. Ct. App. 2003), *aff'd*, 693 N.W.2d 358 (Mich. 2005)) (internal quotation marks and citation omitted). To establish civil conspiracy, "it is necessary to prove a separate,

actionable tort." *Id*. (citation omitted).  As discussed above, Plaintiffs have failed to establish actionable claims for any torts or improper conduct.  Therefore, Plaintiffs' civil conspiracy claims fail as a matter of law and should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed and this Court should order that any arbitration be filed and take place in New York, NY.  In the alternative, the Court should dismiss this case pursuant to Rule 12(b)(6) with leave to refile in the Southern District of New York.  Finally, Plaintiffs' Complaint should be dismissed for failing to state a claim upon which relief can be granted pursuant Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ *Amy E. McCracken*
Amy E. McCracken (P44362)
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6700
aemccracken@duanemorris.com
*Counsel for Defendants*

*Of Counsel*:

Alan C. Kessler (PA Bar No. 22230)
(*application for admission to be filed*)
Jessica Priselac (PA Bar No. 208524)
(*application for admission pending*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2018 a true and correct copy of forgoing

Motion to Dismiss and brief in support thereof were served on all counsel of record via the

Court's CM/ECF system.

_s/*Amy E. McCracken*_____