UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROASTING PLANT OF
MICHIGAN JV, LLC;
ROASTING PLANT OF
DEARBORN HEIGHTS, LLC;
ROASTING PLANT OF
ANN ARBOR, LLC;
ROASTING PLANT OF
DEABORN, LLC; and
ROASTING PLANT OF
SOUTHFIELD, LLC,

    Plaintiffs,

vs.

ROASTING PLANT, INC.,
MIKE CASWELL, and
THOMAS HARTOCOLLIS,

    Defendants.
_____/

Civil Action No. 18-CV-10295

HON. BERNARD A. FRIEDMAN

## **OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS**

This matter is presently before the Court on defendants' motion to dismiss [docket entry 9]. Plaintiffs have filed a response in opposition, and defendants have filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide the motion without a hearing.

*Background*

This case involves a contract dispute over a business agreement to open coffee shops in Michigan. On August 1, 2016, defendant Roasting Plant, Inc. ("RP"), a corporation with its principal place of business in New York, entered into a "Development Agreement" ("Agreement") with plaintiff The Roasting Plant of Michigan JV, LLC ("RP of Michigan").

Compl. ¶¶ 1, 27; Compl. Ex. A ("Roasting Plant Coffee Development Agreement" or "Agr.") at 1. RP has "a unique and distinctive system" for operating "coffee retail concepts," such as cafes and kiosks, that prepare and sell coffee and non-coffee products. Compl. ¶ 6; Agr. at 1. RP identifies the "distinguishing characteristics of the RP System" as including not just the name "Roasting Plant" but also particular interior and exterior design and layouts, decor, recipes, operating procedures, management programs, trade names, trademarks, service marks, and a "patented in-store coffee storage, roasting, transporting, ordering and fulfilling technology hardware and software called the Roasting Plant Javabot." Agr. at 1. The Agreement gave RP of Michigan the "exclusive right and license" to develop seven "RP Retail Units" and a license to use the "RP System and Marks exclusively in connection with the development, construction and operation of the RP Retail Units" at locations approved by RP. Compl. ¶ 31; Agr. at 2. Under the Agreement, RP retained control over various aspects of the operation of the RP Retail Units. Compl. ¶¶ 32-41.

In the complaint, plaintiffs characterize the Agreement as a franchise agreement[1] and allege in Count I that all defendants violated Michigan's Franchise Investment Law ("MFIL"), Mich. Comp. Laws § 445.1501, *et seq.*, by failing to provide plaintiffs with a disclosure statement and because defendant RP never filed a notice to offer and sell a franchise with the State of Michigan. *Id.* ¶¶ 67-74. In Count II, plaintiffs allege that defendant RP violated the Federal Trade Commission Act ("FTCA"), 16 C.F.R. § 436.5 and 15 U.S.C. § 45, along with the MFIL, by failing

---

[1] Defendants dispute that a franchise relationship exists between the parties because they contend that plaintiffs have failed to plead that they paid any of the defendants a "franchise fee" under Mich. Comp. Laws § 445.1502(3). Defs.' Br. at 21-23. Defendants also argue that "many of the Plaintiffs did not . . . exist" when the Agreement was executed. *Id.* at 22-23 n.10. But for the reasons explained below, the Court need not determine whether the Agreement fits within the statutory language of Mich. Comp. Laws § 445.1502(3) in evaluating the issues that are currently before it.

2

to make certain required disclosures. *Id.* ¶¶ 75-80. As an alternative to their MFIL claim in Count I, "in the event that the Court determines that the at-issue transactions do not meet the definition of a franchise under Michigan law," plaintiffs allege in Count V that defendant RP violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws. § 445.901, *et seq.*, by misrepresenting, failing to reveal, and omitting material facts in such a way that caused plaintiffs to be confused, misled, and deceived. *Id.* ¶¶ 108-19.

In Count III, plaintiffs allege that, prior to the Agreement taking effect, all defendants intentionally made false representations of material facts, which plaintiffs relied on. *Id.* ¶¶ 81-87. In Count IV, plaintiffs allege that defendants participated in a "fraudulent scheme" and engaged in a "pattern of racketeering activity" that constituted a "criminal enterprise" in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(A)-(D). *Id.* ¶¶ 88-107. In Count VI, plaintiffs assert a claim of common law and statutory conversion against defendant RP, *id.* ¶¶ 120-23, and in Count VII, they assert a claim of civil conspiracy against all defendants. *Id.* ¶¶ 124-28. For relief, plaintiffs seek rescission of the Agreement, damages in the amount of approximately $12 million, interest, costs, and attorney fees.

Defendants seek dismissal of the complaint on the grounds that the Agreement's arbitration clause requires that plaintiffs' claims be submitted to arbitration. Alternatively, defendants argue that the complaint should be dismissed either (1) under the provision within the arbitration clause that any claims brought by plaintiffs not subject to arbitration shall be filed in a court having jurisdiction in New York County, New York or (2) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Having considered the parties' briefs and the applicable law, the Court is persuaded that dismissal is appropriate because plaintiffs' claims fall within the arbitration clause. The Court therefore finds it unnecessary to consider defendants' remaining arguments.

*Discussion*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "manifests 'a liberal federal policy favoring arbitration agreements.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 2 of the FAA "provides that a written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Flint v. Bank of Am., N.A.*, No. 15-13006, 2016 WL 1444505, at *3 (E.D. Mich. Apr. 13, 2016) (quoting 9 U.S.C. § 2; citing *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). "The Supreme Court has recognized that the FAA 'places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms.'" *Id.* (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Under the FAA, courts reviewing contracts containing arbitration clauses "are required to resolve any ambiguities in the agreement or doubts as to the parties' intentions in favor of arbitration." *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

Section 4 of the FAA, which "sets forth the procedure to be followed in the district court when presented with a petition to compel arbitration," *Flint*, 2016 WL 1444505, at *4 (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002)), provides that upon receiving such a petition,

> [t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "In other words, a district court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.'" *Glazer v. Lehman Bros.*, 394 F.3d 444, 452 (6th Cir. 2005) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967)). "Only if the making of the agreement to arbitrate or the failure to perform such an agreement is in issue must the court conduct a trial." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir. 1983). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable, including, first, whether the parties agreed to arbitrate; and, second, whether the specific dispute falls within the substantive scope of that agreement." *Moran v. Svete*, 366 F. App'x 624, 629 (6th Cir. 2010) (internal citation omitted).

Section 18(B) of the parties' Agreement is called "Arbitration" and provides in relevant part:

> 1. <u>Claims Not Subject to Arbitration</u>. None of the following claims is subject to arbitration under this Agreement: (a) claims involving the propriety of any termination of this Agreement or [RP of Michigan's] or its Affiliated Operator's right to operate an RP Retail Unit; (b) claims involving actual or threatened disclosure or misuse of Trade Secrets; (c) claims involving the ownership, validity or use of the Marks; (d) claims to enjoin a Transfer alleged to be in violation of the Agreement; or (e) claims by [RP] to enforce any non-competition, confidentiality or non-solicitation obligations. The parties agree that any judicial actions that either party may file: **(a)** shall, if filed by [RP of Michigan], be filed only in the federal or state court having jurisdiction where [RP's] principal offices are located at the time suit is filed (currently New York County, New York); . . . .
>
> 2. <u>Claims Subject to Arbitration</u>. Any claim between the parties hereto arising out of or related to this Agreement or the parties' operations under this Agreement will be submitted to final and binding arbitration before the American Arbitration Association ("AAA") as the sole and exclusive remedy, unless expressly excepted from arbitration under this Section 18.
>
> 3. The arbitration will be governed by the AAA commercial arbitration rules in effect on the date the demand for arbitration is filed and shall be conducted before one neutral arbitrator selected in accordance with the

> AAA commercial arbitration rules from the AAA's national or regional arbitrator lists. The arbitration shall be administered by the AAA office nearest to [RP's] principal offices at the time the demand for arbitration is filed and all hearings shall take place in the county in which [RP's] principal offices are located at the time the demand for arbitration is filed. . . . The award and decision of the arbitrator shall be conclusive and binding upon all parties thereto and judgment upon the award may be entered in any court of competent jurisdiction, and both parties waive any right to contest the validity or enforceability of the award.

Agr. at 52-53 (emphasis in original) (alterations added).

Defendants argue that plaintiffs' claims should be submitted to arbitration pursuant to this clause because the parties agreed to arbitration and because all of the claims at issue fall within the arbitration clause's scope. Plaintiffs believe the Court should not compel arbitration without a "trial on the validity of the parties' franchise agreement." Pls.' Resp. Br. at 14-15. For the reasons explained below, the Court finds that arbitration of plaintiffs' claims – not a trial on the validity of the Agreement – is appropriate.

### A. <u>Validity of the Arbitration Clause</u>

Plaintiffs argue that their request to rescind the Agreement makes the Agreement void *ab initio*, and therefore the validity of the Agreement is in issue. *Id.* at 13-15. They assert that the Agreement being void *ab initio* "render[s] the arbitration provision unenforceable." *Id.* at 11 (alteration added). Plaintiffs contend that even if the Agreement is not void *ab initio*, because their request for rescission would terminate the Agreement, their "rescission claim" is not subject to arbitration under § 18(B)(1) of the Agreement. *Id.* at 15-16. Plaintiffs make clear that they "do not seek to invalidate the arbitration clause itself" and that "instead, Plaintiffs seek to rescind the parties' franchise agreement, inclusive of the arbitration provision, as a matter of law." *Id.* at 14.

"[C]ourts need not first determine the validity of the underlying contract in order to enforce . . . an arbitration clause." *Yaroma*, 130 F. Supp. 3d at 1060 (citing *Shell v. R.W. Sturge,*

6

*Ltd.*, 55 F.3d 1227, 1232 (6th Cir. 1995)). The issue of a contract's validity is "secondary" to determining the validity of the arbitration provision. *Id.* "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)). As a result, "[a] federal court need not address whether the entire contract is void or voidable before upholding an arbitration provision under the FAA." *Id.* (alteration added). A party opposing arbitration "bears the burden of 'showing a genuine issue of material fact as to the validity of the agreement to arbitrate'" and must demonstrate "that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable." *Id.* at 1061 (quoting *Great Earth Cos.*, 288 F.3d at 889; citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).

Thus, "[a] party may not avoid arbitration by attacking the overall contract between the parties." *CSA-Credit Sols. of Am., Inc. v. Schafer*, 408 F. Supp. 2d 503, 508 (W.D. Mich. 2006) (citing *Prima Paint Corp.*, 388 U.S. at 402) (alteration added). The Supreme Court has held that "[w]hen a contract contains an arbitration agreement, 'the arbitration provision is severable from the remainder of the contract.'" *Yaroma*, 130 F. Supp. 3d at 1060 (quoting *Buckeye Check Cashing, Inc.*, 546 U.S. at 445). "Because arbitration agreements are separable from the underlying contract, 'attacks on the validity of an entire contract [are] distinct from attacks aimed at the arbitration clause.'" *Flint*, 2016 WL 1444505, at *4 (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008); *Prima Paint Corp.*, 388 U.S. at 402) (alteration in original). "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc.*, 546 U.S. at 449 (alteration added). Meanwhile, "claims against the validity of the arbitration clause will be reserved for the court." *Flint*, 2016 WL 1444505, at *4 (citing *Prima Paint Corp.*, 388 U.S. at 402-04).

7

"Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Johnson v. Stellar Recovery, Inc.*, No. 13-13829, 2014 WL 5705027, at *4 (E.D. Mich. Nov. 5, 2014) (internal quotation omitted). This is because such circumstances indicate that "the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general." *Id.*

In the present case, the arbitration clause and plaintiffs' failure to arbitrate as required by that clause are not in issue. The parties do not dispute that the Agreement, which contains the arbitration clause, was signed. Rather than question the validity of "the arbitration clause itself," plaintiffs challenge the validity of the Agreement as a whole. Although plaintiffs argue that the arbitration clause is unenforceable because the Agreement is void *ab initio*, "the Supreme Court specifically disavowed the void/voidable distinction in *Buckeye*, 546 U.S. at 446," where it was also presented with an argument opposing arbitration because a contract was said to be void *ab initio*. *Moran*, 366 F. App'x at 631. In that case, the Supreme Court determined that "the arbitration agreement was enforceable and the challenge was subject to arbitration" because the challenge was to the contract as a whole (including the arbitration clause), as opposed to a challenge to the validity of the arbitration agreement itself. *Id.* Like the agreement to arbitrate in *Buckeye*, the Agreement's arbitration clause is enforceable and arbitration is appropriate because plaintiffs challenge the entire contract and not the arbitration clause. Plaintiffs have not shown that "the arbitration agreement itself . . . is unenforceable."

### B. Scope of the Arbitration Clause

The Court next considers, for purposes of determining whether a dispute is arbitrable, whether the parties' dispute falls within the substantive scope of the arbitration clause. Plaintiffs make no argument concerning this inquiry.

The Sixth Circuit has established that

> [d]istrict courts have the authority to decide whether an issue is within the scope of an arbitration agreement. *Fazio*, 340 F.3d at 395. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Id.* If it could, then it may fall outside the scope of the arbitration agreement.
>
> When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Where the arbitration clause is broad, only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators. *Id.*

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (alteration added).

The instant action falls within the scope of the arbitration clause because it could not be "maintained without reference to the [Agreement] or relationship at issue." In Counts I and II, plaintiffs assert violations of the MFIL and the FTCA, whose requirements allegedly apply because the parties entered into the Agreement. In Count III, plaintiffs allege that defendants made misrepresentations that they relied upon in "entering into the Agreement" and in "continuing to expend funds in furtherance of the Agreement." Compl. ¶ 86. In Count IV, plaintiffs allege that the "fraudulent scheme perpetrated by Defendants includes but is not limited to, providing Plaintiffs with materially false financial forecasts, misrepresenting the legality of the Agreement,

9

misrepresenting the legal form of the franchises, and attempting to avoid compliance with the MFIL and the Federal Trade Commission Act." *Id.* ¶ 92. In Count V, plaintiffs assert a violation of the MCPA because defendants "caus[ed] confusion and misunderstanding as to the legal rights, obligations, or remedies of [the] parties to the Agreement." *Id.* ¶ 114 (alterations added). Plaintiffs state that the MCPA applies because they paid more than $500 for the RP Retail Units, *id.* ¶ 112, an exchange that happened through the Agreement. Count VI, a claim of common law and statutory conversion against RP, also references RP's "fraudulent scheme," which, as described above, involved the Agreement and the parties' relationship. In this count, plaintiffs take issue with RP's "wrongful dominion" over their money, which RP obtained through the Agreement. *Id.* ¶¶ 121-22. Count VII is a claim of civil conspiracy against all defendants, who allegedly conspired "with the unlawful purpose of defrauding plaintiffs, violating the MFIL, violating the Federal Trade Commission Act, violating RICO, committing statutory conversion, and/or violating the MCPA." *Id.* ¶ 125. Plaintiffs' MFIL, FTCA, RICO, conversion, and MCPA claims all relate to the Agreement and the parties' relationship. This action is therefore covered by the arbitration clause because it cannot be maintained without reference to the Agreement or the parties' relationship, and because there is no evidence that the parties intended to exclude any of these claims from arbitration.

Moreover, Counts I through VII of the complaint do not fall under the "Claims Not Subject to Arbitration" listed in § 18(B)(1) of the Agreement. This is because plaintiffs' claims do not involve the propriety of the termination of the Agreement, RP of Michigan's right to operate an RP Retail Unit, any trade secrets or marks, a transfer, or RP's enforcement of non-competition, confidentiality, or non-solicitation obligations. Plaintiffs' request for rescission does not fall under the non-arbitrable claims in § 18(B)(1) either. A request for rescission is not a claim but a remedy.

Even if it were a claim, it does not "involve[e] the propriety of any termination of th[e] Agreement." Agr. at 52 (alterations added). Plaintiffs broadly interpret § 18(B)(1) as providing that "claims involving termination of the Agreement were expressly reserved for court action." Pls.' Resp. Br. at 11. But this interpretation overlooks the fact that the claims excluded from arbitration are not claims regarding termination of the Agreement; rather, the excluded claims are those involving "the propriety of any termination of th[e] Agreement." Plaintiffs have not asserted such a claim. Therefore, if plaintiffs wish to pursue their claims, they must arbitrate – not litigate – them.

### C. **Enforceability of the Arbitration Clause's Location Provision**

Defendants assert that the arbitration clause requires that plaintiffs' claims be arbitrated in New York. Defs.' Br. at 1, 5. Plaintiffs argue that Mich. Comp. Laws § 445.1527(f) "renders the New York forum selection provision in the agreement 'void and unenforceable.'" Pls.' Resp. Br. at 2. Mich. Comp. Laws § 445.1527 provides in pertinent part:

> Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:
>
> * * *
>
> (f) A provision requiring that arbitration or litigation be conducted outside this state. This shall not preclude the franchisee from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

"The FAA governs all aspects of arbitration procedure and preempts inconsistent state law." *Stout*, 228 F.3d at 716 (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). This Court has determined that "arbitration agreements are to be enforced 'according to their terms' and that the Michigan Franchise Investment Law's prohibition against extra-territorial arbitration agreements, 'impose[s]

11

limitations on the method and manner of arbitration,' which cannot be permitted under the Federal Arbitration Act and the Supremacy Clause." *Flint Warm Air Supply Co. v. York Int'l Corp.*, 115 F. Supp. 2d 820, 827-28 (E.D. Mich. 2000) (alteration in original). When faced with a similar argument, Judge Edmunds concluded:

> Subsection 27(f) of Michigan's Franchise Investment Law was thoroughly discussed in *Flint Warm Air Supply Company v. York International Corporation*, 115 F.Supp.2d 820 (E.D.Mich.2000). After reviewing relevant Supreme Court decisions examining statutory provisions similar to Michigan's, the *Flint Warm Air* court concluded that "Section 27(f) of the [Michigan Franchise Investment Law] is preempted under the FAA." *Id.* at 828. *Accord, Alphagraphics Franchising, Inc. v. Whaler Graphics, Inc.*, 840 F.Supp. 708 (D.Ariz.1993). This Court agrees with the reasoning and conclusion in *Flint Warm Air* and likewise holds that Section 27(f) of Michigan's franchise Investment Law is preempted under the FAA. Accordingly, even if the Distributor Agreement were found to be governed by that statute, Plaintiff is foreclosed from arguing that the arbitration clause in that Agreement is unenforceable.

*Prude v. McBride Research Labs., Inc.*, No. 07-13472, 2008 WL 360636, at *5 (E.D. Mich. Feb. 8, 2008) (alteration in original). Because the FAA preempts the MFIL, even if the MFIL were found to apply to the Agreement, the Agreement's provision that arbitration will take place in New York is enforceable. As a result, if plaintiffs choose to arbitrate their claims, they must do so in New York.

### D. Dismissal Without Prejudice

Having determined that the claims in the complaint are subject to the parties' agreement to arbitrate, the Court could compel arbitration under § 4 of the FAA if defendants had requested this in their motion. But defendants have not asked the Court to compel arbitration; instead, they seek dismissal of the complaint. Where no request is made for arbitration, dismissal without prejudice is the proper remedy. Even if defendants had asked that arbitration be compelled, dismissal without prejudice would still be appropriate. "Federal Courts of Appeal,

including the Sixth Circuit . . . have authorized dismissal where all claims in an action are to be submitted to arbitration and where staying the action and retaining jurisdiction would serve no purpose." *Prude*, 2008 WL 360636, at *7 (citing *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999)). In the present case, plaintiffs have agreed to limit their remedy to arbitration, but defendants do not seek to enforce this agreement to arbitrate by asking that the Court compel arbitration. Accordingly, the Court dismisses plaintiffs' claims without prejudice.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that defendants' motion to dismiss [docket entry 9] is granted because plaintiffs' claims are subject to the Agreement's arbitration clause.

IT IS FURTHER ORDERED that this action is dismissed without prejudice.

|  |  |
|---|---|
| Dated: November 9, 2018<br>Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR U.S. DISTRICT JUDGE |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on November 9, 2018.

s/Johnetta M. Curry-Williams<br>Case Manager